# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **Cosby Siringi, individually and on behalf of similarly situated classes,** § § § § | | |
| Plaintiff, § | | |
| § | | Civil Action 4:24-cv-3008 |
| v. § | | |
| § | | |
| **God is Dope, LLC** § | | |
| Defendant § | | |

## CLASS ACTION

1. **INTRODUCTION**

   1.1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991 generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

   1.2. This action arises out of Defendant, God is Dope, LLC's ("Defendant"), practice of sending marketing/solicitation text messages to individuals without prior express written consent (or any consent whatsoever), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and provisions of the Texas Business

Class Action Complaint - P a g e  | 1

& Commerce Code.

1.3. Plaintiff brings this TCPA action on behalf of himself and two classes of similarly situated individuals.

## 2. Jurisdiction and Venue

2.1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

2.2. This Court also has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a), because it is so closely related to the federal claim that they form a single case or controversy.

2.3. This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District and has committed tortious acts in this District. A substantial portion of the acts giving rise to this action occurred in this District.

## 3. Parties

3.1. Cosby Siringi ("Plaintiff") is, and at all times mentioned herein was, a citizen and resident of Huntsville, Texas.

3.2. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

3.3. Plaintiff is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

3.4. Defendant is a Georgia business entity with an address of 451 Edgewood Avenue SE, Atlanta, Georgia 30312, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

3.5. Defendant is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

4. **THE LAW REGARDING ROBOCALLS**

4.1. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

5. **THE NATIONAL DO NOT CALL REGISTRY**

5.1. The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

5.2. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

5.3. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

5.4. The Federal Communications Commission found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and

enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

5.5. These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7).

5.6. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d) (1, 2, 3, 6).

5.7. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

5.8. Additionally, these regulations require a company to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. 47 CFR 64.1200(d)(4) (emphasis added).

5.9. These policies and procedures prohibit a company from making calls for telemarketing

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR § 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR § 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR § 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR § 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

purposes[2] unless they provide the required information. 47 CFR 64.1200(d).

5.10. Accordingly, **all telemarketing calls/text messages** violate the TCPA, unless Defendants can demonstrate that they implemented the required policies and procedures.

5.11. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

5.12. These requirements are separate but cumulative. In other words, a company must comply with both the required information and comply with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

---

[2] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

5.13. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

5.14. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

5.15. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, including as described herein as to Defendant, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

6. **GENERAL FACTUAL ALLEGATIONS**

6.1. Defendant sends solicitation text messages to potential customers. Many of those potential customers are on the national Do Not Call Registry.

6.2. It sends text messages to individuals to encourage the purchase of Defendant's clothing.

6.3. The text messages advertise Defendant's branded clothing, including a link to Defendant's web store, and encourage Plaintiff to visit Defendant's website and purchase its products (e.g., "Today only, SHOP NOW!"; "FLASH SALE! ... Click it or miss it!").

6.4. Representative text messages or reproduced below:



6.5. Defendant does not have the proper procedures in place to allow a recipient of the text messages to opt out of receiving future text messages.

6.6. Defendant does not have or use an internal do-not-call list.

7. **PLAINTIFF COSBY SIRINGI'S FACTUAL ALLEGATIONS**

7.1. Plaintiff is the owner and user of a cellular telephone number 936-662-8927.

7.2. Plaintiff's cellular telephone number 936-662-8927 is used for residential purposes. Plaintiff does not have a separate residential telephone number and uses the cellular telephone as a residential telephone number.

7.3. Plaintiff's cellular telephone number 936-662-8927 is a telephone number assigned to a cellular telephone service.

7.4. Plaintiff's cellular telephone number 936-662-8927 was placed by him on the national Do Not Call Registry on September 18, 2015, and has remained on the Registry since that time.

7.5. Plaintiff placed his cellular telephone number 936-662-8927 on the national Do Not Call Registry at least six months prior to receiving the text messages at issue in this case.

7.6. In 2020-21, Plaintiff began receiving illegal text messages from Defendant. The texts were received on 936-662-8927. Discovery will show the exact number of text messages.

7.7. Plaintiff has no prior business relationship with Defendant, has never purchased any products from Defendant, is never provided the cellular telephone number to defendant, and never provided consent for defendant to contact Plaintiff's cellular telephone number.

7.8. Plaintiff received text messages from Defendant on at least the following dates after he

opted out:

| Date | Time | Date | Time |
|---|---|---|---|
| 2/9/2021 | 5:47 PM | 5/8/2021 | 4:05 PM |
| 3/26/2021 | 8:22 AM | 5/9/2021 | 4:01 PM |
| 3/31/2021 | 4:41 PM | 5/10/2021 | 6:08 PM |
| 4/1/2021 | 7:58 PM | 5/10/2021 | 6:08 PM |
| 4/3/2021 | 3:01 PM | 5/11/2021 | 6:03 PM |
| 4/4/2021 | 5:43 PM | 5/12/2021 | 5:17 PM |
| 4/5/2021 | 6:53 PM | 5/13/2021 | 5:09 PM |
| 4/6/2021 | 6:26 PM | 5/14/2021 | 5:14 PM |
| 4/7/2021 | 5:18 PM | 5/15/2021 | 6:01 PM |
| 4/9/2021 | 7:43 PM | 5/16/2021 | 6:07 PM |
| 4/11/2021 | 6:53 PM | 5/17/2021 | 5:04 PM |
| 4/12/2021 | 7:10 PM | 5/18/2021 | 5:04 PM |
| 4/13/2021 | 5:40 PM | 5/19/2021 | 2:13 PM |
| 4/14/2021 | 5:50 PM | 5/19/2021 | 6:06 PM |
| 4/15/2021 | 7:22 PM | 5/20/2021 | 5:11 PM |
| 4/16/2021 | 5:12 PM | 5/21/2021 | 4:05 PM |
| 4/18/2021 | 2:02 PM | 5/22/2021 | 5:07 PM |
| 4/19/2021 | 6:38 PM | 5/23/2021 | 5:12 PM |
| 4/20/2021 | 6:33 PM | 5/24/2021 | 5:17 PM |
| 4/21/2021 | 4:06 PM | 5/25/2021 | 5:10 PM |
| 4/22/2021 | 6:59 PM | 5/26/2021 | 5:06 PM |
| 4/23/2021 | 3:03 PM | 5/31/2021 | 11:32 AM |
| 4/24/2021 | 7:32 PM | 5/31/2021 | 6:11 PM |
| 4/26/2021 | 4:28 PM | 6/2/2021 | 5:09 PM |
| 4/27/2021 | 6:08 PM | 6/10/2021 | 5:14 PM |
| 4/28/2021 | 6:26 PM | 6/19/2021 | 5:08 PM |
| 5/3/2021 | 11:28 AM | 6/28/2021 | 6:21 PM |
| 5/4/2021 | 5:04 PM | 7/1/2021 | 6:05 PM |
| 5/5/2021 | 6:23 PM | 7/2/2021 | 5:20 PM |
| 5/6/2021 | 4:04 PM | 7/4/2021 | 5:13 PM |
| 5/7/2021 | 4:01 PM | 7/5/2021 | 5:19 PM |
| | | 7/8/2021 | 5:09 PM |

7.9. On February 9, 2021, Plaintiff replied to the text messages with the word "Stop."

   7.9.1. The text messages did not stop.

7.10. Each of these illegal text messages were for the purpose of selling Defendant's

clothing to Plaintiff. Thus, they were both solicitations and telemarketing within the meaning of the TCPA.

7.11. Plaintiff residential cellular telephone number 936-662-8927 was on the national Do Not Call Registry for at least six months at the time he received these texts.

7.12. Plaintiff did not give Defendant permission to send text messages to him. To the extent Plaintiff had an established business relationship with Defendant, Plaintiff revoked that relationship when on February 9, 2021 he responded to a text message from Defendant by telling Defendant to stop texting him.

7.13. Because Defendant continued texting Plaintiff after Plaintiff had told Defendant to stop texting him, the text messages sent by Defendant were a knowing and/or willful violation of the TCPA.

8. **Defendant's Liability**

8.1. Because Defendant's text messages constitute telemarketing, Defendant was required to obtain prior express written consent from the persons to whom Defendant sent the text messages.

8.2. "Prior express written consent" is specifically defined by statute as:

8.2.1. [A]n agreement, in writing, bearing the signature of the person called **that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice**, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. §64.1200(f)(8)

8.3. To the extent Plaintiff provided Defendant with permission to send text messages to him, such consent and/or permission was revoked by responding "stop" to text

messages he received from Defendant.

8.4. The TCPA prohibits making "any telephone solicitation" to a telephone number on the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c); 47 C.F.R. § 64.1200(e).

8.5. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8.6. A listing on the National Do Not Call Registry "must be honored indefinitely . . . ." *Id.*

8.7. Plaintiff's number was on the National Do-Not-Call Registry for more than 31 days prior to the calls.

8.8. Plaintiff received more than one such solicitation text message in a 12-month period, as required by 47 C.F.R. § 64.1200(c) for violations of 47 U.S.C. § 227(c).

8.9. In addition, pursuant to § 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

8.10. As set forth above, Defendant violated 47 U.S.C. § 227, or a regulation adopted under that provision.

8.11. Accordingly, Plaintiff is entitled to a permanent injunction, and the greater of $500.00 for each violation or Plaintiff's actual damages for each call made by Defendant. *See* Tex. Bus. & Com. Code § 305.053(b).

8.12. Plaintiff is entitled to an additional $1,500 per call if Defendant's actions are found

to be knowing or intentional. *See* Tex. Bus. & Com. Code § 305.053(c).

9. **ARTICLE III STANDING**

   9.1. Plaintiff has Article III standing for his claim under the TCPA. *Spokeo, Inc., v. Thomas Robins*, 136 S. Ct. 1540 (2016). *See also*, *Cranor v. 5 Star Nutrition, L.L.C.,* 998 F.3d 686, 690 (5th Cir. 2021).

   9.2. Plaintiff was harmed by Defendant's actions in the following manners:

   9.2.1. Plaintiff's privacy was invaded by Defendant;

   9.2.2. Plaintiff was harassed and abused by Defendant's text messages;

   9.2.3. Defendant's text messages were a nuisance to Plaintiff; and

   9.2.4. Plaintiff was inconvenienced by Defendant's text messages, by among other things, having to read the text messages.

   9.3. These forms of actual injury are sufficient for Article III standing purposes.

10. **CLASS ACTION ALLEGATIONS**

    10.1. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," the "TCPA 227(c) Class, the "Texas § 305.053 Class" as defined as follows:

    10.1.1. "TCPA 227(c) Class"

       10.1.1.1. Since August 13, 2020, through the date of certification, all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more solicitation text messages in a 12-month period when the telephone number to which the text messages were sent was on the National Do-Not-Call Registry at the time of the text messages and after which the called party had requested that Defendant not send any more text messages to him/her.

    10.1.2. Texas § 305.053 Class"

    10.1.2.1. Since August 12, 2020, through the date of certification, Plaintiff and all residents of the State of Texas to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing text messages in a 12-month period when the telephone number to which the text messages were sent was on the National Do-Not-Call Registry at the time of the text messages and after which the called party had requested that Defendant not send any more text messages to him/her.

10.2.    The "TCPA 227(c) Class, and the "Texas § 305.053 Class" are collectively referred to herein as the "Classes."

10.3.    Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families.

10.4.    The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

10.5.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

    10.5.1.    The time period(s) during which Defendant placed its calls;

    10.5.2.    The telephone numbers to which Defendant placed its calls;

    10.5.3.    The telephone numbers for which Defendant had prior express written consent;

    10.5.4.    The purposes of such calls; and

    10.5.5.    The names and addresses of Class members.

10.6.    The Classes are comprised of hundreds, if not thousands, of individuals.

10.7. There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

    10.7.1. Whether Defendant (or someone acting on its behalf) sent solicitation text messages to individuals after the individuals informed Defendant they did not want to receive such text messages.

    10.7.2. Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

    10.7.3. Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violations; and

    10.7.4. Whether Defendant should be enjoined from engaging in such conduct in the future.

10.8. Plaintiff is a member of the Classes in that Defendant sent more than one text message to him when he had not consented to receive such messages.

10.9. Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

10.10. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted text messages and suffered a nuisance and an invasion of their privacy.

10.11. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

10.12.　Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

10.13.　Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

10.14.　The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

10.15.　A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

10.16.　Common questions will predominate, and there will be no unusual manageability issues.

11. **FIRST CAUSE OF ACTION - Violations of the TCPA, 47 U.S.C. § 227(c) (On Behalf of Plaintiff and the TCPA 227(c) Class)**

    11.1. Plaintiff and the proposed TCPA 227(c) Class incorporate the foregoing allegations as if fully set forth herein.

    11.2.　Defendant placed, or had placed on its behalf, telemarketing text messages to Plaintiff's and TCPA 227(c) Class Members' residential telephone numbers.

    11.3. Defendant did so despite not having a written policy pertaining to "do not call" requests.

    11.4.　Defendant did so despite not having such a policy available "upon demand."

    11.5. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

    11.6.　Defendant did so despite not recording or honoring "do not call" requests.

11.7. Defendant did so without complying with the identification and disclosure requirements. 47 C.F.R. § 64.1200(d)(4).

11.8. Plaintiff's and TCPA 227(c) Class Members' telephone numbers were all on the National Do-Not-Call Registry for at least 30 days at the time of the text messages.

11.9. Plaintiff and TCPA 227(c) Class Members each received two or more such text messages in a 12-month period.

11.10. Plaintiff and TCPA 227(c) Class Members did not provide prior express written consent to receive such messages or had requested that such messages stop.

11.11. Plaintiff and TCPA 227(c) Class Members are entitled to an award of up to $500 in statutory damages for each text message pursuant to 47 U.S.C. § 227(c)(5).

11.12. Plaintiff and TCPA 227(c) Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

11.13. All of the violations after the "Stop" request (2-9-2021) were knowing and willful violations because Defendant was aware that Plaintiff did not consent to receiving text messages from Defendant.

12. **SECOND CAUSE OF ACTION – Violations of Texas § 305.053 Class (On Behalf of Plaintiffs and the Texas § 305.053 Class)**

12.1. Plaintiff and the proposed Texas § 305.053 Class incorporate the foregoing allegations as if fully set forth herein.

12.2. Defendant placed, or had placed on its behalf, at least two text message solicitations to Plaintiff's and Texas § 305.053 Class Members' cellular residential telephone numbers.

12.3. Plaintiff and the Texas § 305.053 Class Members did not provide prior express written consent to receive such messages or had requested that such messages stop.

12.4. Each of these text messages violated 47 U.S.C. § 227(c).

12.5. Plaintiff and the Texas § 305.053 Class Members are entitled to:

  12.5.1. a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

  12.5.2. the greater of $500 for each violation or Plaintiff's and the Texas § 305.053 Class Members' actual damages (*see* Tex. Bus. & Com. Code §304.053(b);

  12.5.3. the greater of $1,500 for each violation or Plaintiff's and the Texas § 305.053 Class Members' actual damages for each text message made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

  12.5.4. All of the violations after the "Stop" request (2-9-2021) were knowing and willful violations because Defendant was aware that Plaintiff did not consent to receiving text messages from Defendant.

## 13. Prayer for Relief

13.1. Plaintiff, individually and on behalf of the Classes, prays for the following relief:

  13.1.1. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing his counsel as Class Counsel;

  13.1.2. An order declaring that Defendant's actions, as set out above, violate the

TCPA;

13.1.3. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

13.1.4. An award of statutory damages;

13.1.5. An award of treble damages;

13.1.6. An award of reasonable attorneys' fees and costs; and

13.1.7. Such other and further relief that the Court deems reasonable and just.

## 14. Jury Demand

14.1. Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

By:    */s/ Chris R. Miltenberger*
      Chris R. Miltenberger
      Texas Bar Number: 14171200

**The Law Office of Chris R. Miltenberger, PLLC**

1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

**Attorneys for Plaintiff**